IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JAMES SHAVER,

        Plaintiff

                                           Case No. CV-99-J-2093-S

v.

UNION CAMP CORPORATION,

        Defendant

## MEMORANDUM OPINION

This cause comes on to be heard on the defendant's motion for summary judgment (doc. 13) and the plaintiff's opposition to said motion, and the court having considered said motion, brief and evidentiary matters submitted in support of said motion and well as the plaintiff's brief and evidentiary matters submitted in opposition to said motion, as well as the defendant's reply brief and evidentiary matters submitted in reply to plaintiff's opposition, and the court being of the opinion that the defendant's motion for summary judgement is due to be granted, the court finding that no genuine issues of material fact exist;

It is therefore ordered that said motion be and hereby is GRANTED in accordance with Rule 56 of the Federal Rules of Civil Procedure.

### Statement of Facts

Viewing the facts most favorably to the plaintiff, they are as follows: Plaintiff, James Shaver, was working for Builders Transport on June 25, 1997. Plaintiff's

deposition at 38. He had worked as a truck driver since 1977. *Id.* at 34. On the day in question he was driving an eighteen wheeler truck and flatbed trailer. Plaintiff's depo. at 72. Plaintiff had only been to defendant's lumber yard a couple of times before. *Id.* at 73. He was picking up a load of lumber consisting of three bundles 4x4's eight feet long, five bundles of 4x4's ten feet long, three bundles of 4x4's twelve feet long, two bundles of 4x4's fourteen feet long and one bundle of 4x4's sixteen feet long. Exhibit 1 to Affidavit of Darrell Spatcher. Plaintiff arrived to the defendant's yard around two p.m., weighed the truck in and drove around to the loading area. Plaintiff knew where he was going. Plaintiff's depo. at 72-73, 79. Approximately one and one-half hour later, one of defendant's employees loaded the bundles of lumber with a forklift. Plaintiff's depo. at 79-80. Plaintiff did not know the forklift operator, and no one but the plaintiff and the defendant's forklift operator was around when the loading of the trailer occurred. *Id.* When asked if there was anybody up on the flat bed making sure the forklift operator got the load lined up, the plaintiff testified: "No, that's my job on the ground making sure he gets it because I'm the one that's going to haul it". Plaintiff's depo. at 81. Plaintiff gave the following testimony with respect to the loading:

> Q: Did he [the forklift operator] get the load up there like you wanted it?
>
> A: Well, no. It wasn't up there the way I wanted it, no.
>
> Q: What was wrong with the way that he put the load up there?
>
> A: It had gaps in it.

>Q: Do you remember where the gaps were?

>A: It was between the first row and the second row.

Plaintiff's depo. at 81. Plaintiff further testified that "the norm is to push it -- get everything tight to the front and then if you got three eight-foots, get one down one side, then the one side would have nothing. You know, one side would be empty". Plaintiff's depo. at 82. Plaintiff's expert, Barry L. Brunstein, likewise testified that the bundles should have been placed as flush as possible with one another. Brunstein Affidavit at 4. When asked if he complained to the forklift operator about the way he had put it on there, plaintiff testified: "I might have shook my head but you don't argue with them because you will end up sitting there for another three or four hours. Plaintiff's depo. at 82. At the time the forklift operator finished loading, he placed the tarp on top of the load. The tarp is bundled and up on top. *Id.* at 89-90. Plaintiff temporarily strapped the bundles of lumber down and drove his truck and trailer to be weighed. *Id.* at 84-87. Thereafter, plaintiff climbed on top of the load, took hold of the tarp, rolled it out and flipped it over to the sides. Plaintiff was in the process of getting it lined up when he back up into the hole[1]. Plaintiff's depo. at 90. The hole was not covered with the tarp at the time plaintiff backed up into it. He was going to cover the hole with the tarp. Plaintiff's depo. at 91.

---

[1]The plaintiff's employer's report of the accident indicates that plaintiff told his employer that while he was securing the load " [the] rachet bar slipped, he fell, twisted back and right hip". Exhibit 1 to Plaintiff's deposition.

The hole that plaintiff stepped into was a gap. Plaintiff's depo. at 92. Plaintiff testified that he got up on top of the load and then spread out the tarp. *Id.* With respect to whether or not he had an opportunity to look around and see how the load was placed when he got on top of it, plaintiff gave the following testimony:

Q: During that time did you have an opportunity to look around and see how the load was placed?

A: Yeah, I probably had an opportunity, but–

Q: Did you take the time to look and see whether or not there were any gaps in the top?

A: I don't recollect, no.

Q: Did you take the opportunity to look and see before you backed up whether or not your way was clear to back up?

A: No, or I wouldn't have fell in the hole.

Q: Why didn't you do that?

A: I don't know.

Plaintiff's depo. at 92-93. Plaintiff injured himself as a result of stepping in that hole as he was backing up to place the tarp. *Id.* Plaintiff actually fell off the truck. Plaintiff's depo. at 99.

Plaintiff testified that it was his duty and responsibility at Union Camp to tarp and tie down the load. Plaintiff's depo. at 104. He further testified that the forklift operator had to put the load on "proper and safe". *Id.* at 105. Additionally, he testified:

Q: [Y]ou have the authority, don't you, that if you don't like the way it's put on there to say, hey, I don't like the way you do that?

A: If it's unsafe?

Q: Yeah.

A: I've got the authority. But I've had problems with that – I never seen the gap to start off with. Never paid no attention to the gap. But, you know, when he goes up with the forklift and sets it down, he's supposed to run it tight up to the one in front of it. *Id.*

### Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

      proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-moving party to "go beyond the pleadings and by ...affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Federal Rule of Civil Procedure 56(e). In meeting this burden the non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Federal Rules of Civil Procedure 56(c); *Matsushita,* 475 U.S. at 587, *see also Anderson,* 477 U.S. at 249. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).

      On motions for summary judgment, the court shall construe the evidence and factual inferences arising therefrom in the light most favorable to the non-moving party. *See Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157 (1970). The substantive law will

identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). All reasonable doubt about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require a submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-252.

## Legal Analysis

Georgia Code § 51-11-7 provides as follows: "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover"(1999)[2]. Viewing all facts and inferences from the facts most favorably to the plaintiff, the defendant's forklift operator was negligent when he failed to load the bundles of lumber without gaps on the plaintiff's trailer. However, it is undisputed that plaintiff was aware that it had gaps in it, even to the extent that he knew the gaps were between the first and the second row, before he climbed up onto the trailer to fasten the tarp. It is also undisputed that the plaintiff had an opportunity to examine

---

[2]The parties agree that Georgia law applies.

how the load was placed on the trailer, before he climbed up. It is further undisputed that the plaintiff had the authority to ask the defendant's forklift operator to reload the load, if he felt it was loaded in an unsafe manner.

Failing to examine how the load was placed knowing that there were gaps prior to climbing up on the trailer, or knowing that there were gaps and failing to instruct the defendant's forklift operator to reload in a safe manner without gaps, is negligence as a matter of law on the part of the plaintiff for failing to notice or ignoring that which was in plain view. *Hillard v. Federal Paper Board Company, Inc.,* 463 S.E.2d 494 (Ga.App. 1995). *See also Emory University Inc. v. Duncan,* 355 S.E.2d 446 (Ga. App. 1987) and *Batten v. J. H. Harvey Company,* 223 Ga.App. 262, 477 S.E.2d 400 (Ga. App. 1996) ("It is generally incumbent upon one to use his eyesight for the discovering of any obstruction that may have been placed in the way").

The plaintiff argues that the facts in the case at bar are indistinguishable from the facts in *Hillard,* plaintiff's brief at 8-9. This court disagrees. In *Hillard*, the plaintiff did not see the gaps *at any time* prior to falling in the hole, *Hillard at* 496 (emphasis added), nor did that plaintiff have any reason to examine the load for gaps, because on prior occasions the defendant's employees had loaded his truck with no gaps between the boards, *Id.* In *Hillard,* the plaintiff had covered the load with the tarp, walking along side the lumber and rolling the tarp over it, and did not mount the trailer until the tarp covered the entire load, leaving the plaintiff with no opportunity to look for and discover the gap,

8

*Id.* In the case at bar, the plaintiff knew that there were gaps, they were in plain view when he mounted the trailer and unfurled the tarp, but he paid no attention to them. He had at least equal knowledge with defendant's forklift operator of the existence of the gaps, and his own failure to look for gaps when unfurling the tarp, as well as his failure to instruct the defendant's forklift operator to re-load the lumber when he became aware of the gaps caused the plaintiff to fall in the hole created by the gap.[3] *See Hillard*, 463 S.E.2d at 496. Thus, the court finds that plaintiff by exercising ordinary care could have avoided the consequences to himself caused by defendant's negligence, and he is therefore barred from recovery pursuant to Georgia Code § 51-11-7.

## Conclusion

Based upon a consideration of all of the foregoing, the court finds that no genuine issue of any material fact exist and that defendant is entitled to a judgment in its favor as a matter of law.

Wherefore defendant's motion for summary judgment is **GRANTED**.

**DONE** and **ORDERED** this the 20 day of July, 2000.

Inge P. Johnson
United States District Judge

---

[3] It is unnecessary for the disposition of this case to reach the issue of whether or not the Federal Motor Carrier Safety Regulations apply to the facts of this case, wherefore the court declines to address this issue.